UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JURISICH OYSTERS, LLC, et al.,

  *Plaintiffs,*

 v.

U.S. ARMY CORPS OF ENGINEERS, et al.,

  *Defendants.*

Case No. 2:24-cv-00106
Judge Susie Morgan
Magistrate Judge Donna P. Currault

## FEDERAL DEFENDANTS' ANSWER
## TO PLAINTIFFS' COMPLAINT

  Federal Defendants, U.S. Army Corps of Engineers, U.S. National Marine Fisheries Service, and U.S. Fish and Wildlife Service, provide the following Answer to Plaintiffs' Complaint (ECF No. 1). The numbered paragraphs below correspond to the numbered paragraphs in the Complaint. Federal Defendants deny any allegations in the Complaint, whether express or implied, that are not specifically admitted, denied, or qualified herein. To the extent that the headings in the Complaint contain factual allegations that require a response, the headings are denied.

1. The allegations in Paragraph 1 consist of Plaintiffs' characterization of their case to which no response is required. To the extent a response is required, Federal Defendants admit that the U.S. Army Corps of Engineers issued permits for the Mid-Barataria Sediment Diversion Project ("MBSD Project" or "Project"). The remaining allegations in Paragraph 1 are vague and ambiguous, particularly to the extent that they fail to define or explain the term "massive" and the phrase "largest ecosystem restoration project," and are denied on that basis.

2.      In response to allegations in the first sentence of Paragraph 2, Federal Defendants admit that

the Project will divert volumes of sediment and freshwater from the Mississippi River to the

Barataria Basin in southern Louisiana, a process which is intended to mimic deltaic processes

and to build wetlands and support coastal resilience to climate change and sea level rise, but

deny any remaining allegations in the first sentence. The remaining allegations in Paragraph 2

consist of Plaintiffs' characterization of their case to which no response is required. To the

extent a response is required, the allegations are denied.

3.      The allegations in the Paragraph 3 consist of Plaintiffs' characterization of their case and legal

conclusions to which no response is required. To the extent a response is required, the

allegations are denied.

4.      The allegations in Paragraph 4 consist of legal conclusions to which no response is required.

To the extent a response is required, the allegations are denied.

5.      Federal Defendants lack knowledge and information sufficient to form a belief as to the truth

of the allegations in Paragraph 5 and deny them on that basis.

6.      Federal Defendants lack knowledge and information sufficient to form a belief as to the truth

of the allegations in Paragraph 6 and deny them on that basis.

7.      Federal Defendants lack knowledge and information sufficient to form a belief as to the truth

of the allegations in the first sentence of Paragraph 7 and deny them on that basis.  Federal

Defendants deny the remaining allegations in Paragraph 7.

8.      Federal Defendants lack knowledge or information sufficient to form a belief as to the truth of

the allegations regarding Jurisich's interests in Paragraph 8 and deny them on that basis.  The

remaining allegations in Paragraph 8 are vague and ambiguous as to the harms alleged and

wildlife and habitats being referenced, and Federal Defendants deny the allegations on that basis.

9.  Federal Defendants admit that Jurisich Oysters submitted the referenced comments. The remaining allegations in Paragraph 9 purport to characterize Jurisich's June 3, 2021 comment letter on the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the June 3, 2021 comment letter.

10.  Federal Defendants deny the allegations in the first and second sentences of Paragraph 10. The allegations in the third and fourth sentences of Paragraph 10 describe Plaintiffs' request for relief, to which no response is required. To the extent a response is required, Federal Defendants deny that Plaintiffs are entitled to the relief requested or any relief whatsoever.

11.  Federal Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and deny them on that basis.

12.  Federal Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and deny them on that basis.

13.  Federal Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations regarding Ameripure's interests in Paragraph 13 and deny them on that basis.  The remaining allegations in Paragraph 13 are vague and ambiguous as to the harms alleged and wildlife and habitats being referenced, and Federal Defendants deny the allegations on that basis.

14.  Federal Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in the first, second, and third sentences of Paragraph 14 and therefore deny the allegations.  The allegations in the fourth sentence of Paragraph 14 are denied.

15. Federal Defendants admit that Ameripure submitted the referenced comments. The remaining allegations in Paragraph 15 purport to characterize Ameripure's comment letter on the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of Ameripure's comment letter.

16. The allegations in the first and second sentences of Paragraph 16 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations in the third and fourth sentences of Paragraph 16 describe Plaintiffs' request for relief, to which no response is required. To the extent a response is required, Federal Defendants deny that Plaintiffs are entitled to the relief requested or any relief whatsoever.

17. Federal Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and deny them on that basis.

18. Federal Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and deny them on that basis.

19. Federal Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations regarding Mr. Tesvich's interests in Paragraph 19 and deny them on that basis. Federal Defendants deny the allegations in the last sentence of Paragraph 19.  The remaining allegations in Paragraph 19 are vague and ambiguous as to the harms alleged and wildlife and habitats being referenced, and Federal Defendants deny the allegations on that basis.

20. Federal Defendants admit Mr. Tesvich submitted the referenced comments. The remaining allegations in Paragraph 20 purport to characterize Mr. Tesvich's comment letter on the Draft

EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of Mr. Tesvich's comment letter.

21. Federal Defendants deny the allegations in the first and second sentences of Paragraph 21. The allegations in the third and fourth sentences of Paragraph 21 describe Plaintiffs' request for relief, to which no response is required. To the extent a response is required, Federal Defendants deny that Plaintiffs are entitled to the relief requested or any relief whatsoever.

22. Federal Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and deny them on that basis.

23. Federal Defendants admit that the International Marine Mammal Project ("IMMP") and Earth Island Institute ("EII") submitted the referenced comment letter on the Draft EIS. The remaining allegations in Paragraph 23 purport to characterize that comment letter, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of IMMP and EII's comment letter.

24. Federal Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and deny them on that basis.

25. Federal Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 25 and deny them on that basis.  The remaining allegations in Paragraph 25 are vague and ambiguous as to the harms alleged and wildlife and habitats being referenced, and Federal Defendants deny the allegations on that basis.

5

26.    Federal Defendants deny the allegations in the first and second sentences of Paragraph 26. The allegations in the third and fourth sentences of Paragraph 26 describe Plaintiffs' request for relief, to which no response is required. To the extent a response is required, Federal Defendants deny that Plaintiffs are entitled to the relief requested or any relief whatsoever.

27.    In response to the allegations in the first sentence of Paragraph 27, Federal Defendants admit that the Corps is a direct reporting unit in the Department of Army, which is a component of the Department of Defense. The allegations in the second sentence contain Plaintiffs' characterizations of the Clean Water Act (33 U.S.C. §§ 1251 et seq.) Section 404 and the Rivers and Harbors Act (33 U.S.C. § 401 et seq.) Section 10, statutes that speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of those statutes are denied. The allegations in the third sentence (i) constitute legal conclusions to which no response is required and (ii) are vague and ambiguous, particularly to the extent that they fail to define the phrase "ultimately responsible," and are denied on that basis.

28.    In response to the allegations in the first sentence of Paragraph 28, Federal Defendants admit that FWS is an agency within the United States Department of the Interior. In response to the allegations in the second sentence of Paragraph 28, FWS admits that it shares responsibility with NMFS for administering the ESA with regard to estuarine and marine species and their designated critical habitats. The allegations in the third sentence of Paragraph 28 (i) constitute legal conclusions to which no response is required and (ii) are vague and ambiguous, particularly to the extent that they fail to define the phrase "responsible for the actions," and are denied on that basis.

29.     In response to the allegations in the first sentence of Paragraph 29, Federal Defendants admit that
        NMFS is an agency within the National Oceanic Atmospheric Administration, which is within the
        United States Department of Commerce. In response to the allegations in the second sentence of
        Paragraph 29, NMFS admits that it shares responsibility with FWS for administering the ESA
        with regard to estuarine and marine species and their designated critical habitats. The allegations
        in the third sentence of Paragraph 29 (i) constitute legal conclusions to which no response is
        required and (ii) are vague and ambiguous, particularly to the extent that they fail to define the
        phrase "responsible for the actions," and are denied on that basis.

30.     The allegations in Paragraph 30 and the first two sentences of footnote 1 purport to
        characterize the National Environmental Policy Act ("NEPA") and its implementing
        regulations, which speak for themselves and are the best evidence of their contents. Any
        allegations contrary to the plain language, meaning, and context of NEPA and its
        implementing regulations are denied.  With respect to the third and fourth sentences of
        footnote 1, Federal Defendants admit that the NEPA analysis here commenced prior to the
        2020 amendments and that Federal Defendants' NEPA analysis applied the 1978 Council of
        Environmental Quality Regulations.

31.     The allegations in Paragraph 31 purport to characterize NEPA and its implementing
        regulations, which speak for themselves and are the best evidence of their contents. Any
        allegations contrary to the plain language, meaning, and context of NEPA and its
        implementing regulations are denied.

32.     The allegations in Paragraph 32 purport to characterize NEPA and its implementing
        regulations, which speak for themselves and are the best evidence of their contents. Any

allegations contrary to the plain language, meaning, and context of NEPA and its implementing regulations are denied.

33. The allegations in Paragraph 33 purport to characterize NEPA and its implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of NEPA and its implementing regulations are denied.

34. The allegations in Paragraph 34 and footnote 2 purport to characterize NEPA and its implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of NEPA and its implementing regulations are denied.

35. The allegations in Paragraph 35 purport to characterize NEPA and its implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of NEPA and its implementing regulations are denied.

36. The allegations in Paragraph 36 purport to characterize NEPA and its implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of NEPA and its implementing regulations are denied.

37. The allegations in Paragraph 37 purport to characterize the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 et seq., and the Supreme Court's decision in *Tennessee Valley Auth. v. Hill*, 437 U.S. 153 (1978), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the ESA and the referenced court decision are denied.

38.     The allegations in Paragraph 38 purport to characterize the ESA, which speaks for itself and is
        the best evidence of its contents. Any allegations contrary to the plain language, meaning, and
        context of the ESA are denied.

39.     The allegations in Paragraph 39 purport to characterize the ESA and its implementing
        regulations, which speak for themselves and are the best evidence of their contents. Any
        allegations contrary to the plain language, meaning, and context of the ESA and its
        implementing regulations are denied.

40.     The allegations in Paragraph 40 purport characterize the ESA, which speaks for itself and is
        the best evidence of its contents. Any allegations contrary to the plain language, meaning, and
        context of the ESA are denied.

41.     The allegations in Paragraph 41 purport to characterize the ESA and its implementing
        regulations, which speak for themselves and are the best evidence of their contents. Any
        allegations contrary to the plain language, meaning, and context of the ESA and its
        implementing regulations are denied.  The allegations in footnote 3 purport to characterize a
        Memorandum of Understanding between FWS and NMFS, which speaks for itself and is the
        best evidence of its contents.  Any allegations contrary to the plain language, meaning, and
        context of the memorandum are denied.

42.     The allegations in Paragraph 42 purport to characterize the ESA and its implementing
        regulations, which speak for themselves and are the best evidence of their contents. Any
        allegations contrary to the plain language, meaning, and context of the ESA and its
        implementing regulations are denied.

43.     The allegations in Paragraph 43 purport characterize the ESA and its implementing
        regulations, which speak for themselves and are the best evidence of their contents.  Any

allegations contrary to the plain language, meaning, and context of the ESA and its implementing regulations are denied.

44. The allegations in Paragraph 44 purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the ESA and its implementing regulations are denied.

45. The allegations in Paragraph 45 purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to the plain language, meaning, and context of the ESA and its implementing regulations are denied.

46. The allegations in Paragraph 46 purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to the plain language, meaning, and context of the ESA and its implementing regulations are denied.

47. The allegations in Paragraph 47 purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to the plain language, meaning, and context of the ESA and its implementing regulations are denied.

48. The allegations in Paragraph 48 purport to characterize the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Supreme Court's decision in *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the referenced statute and court decision are denied.

49.     The allegations in Paragraph 49 characterize the Supreme Court's decisions in *State Farm* and *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360 (1989), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the referenced court decisions are denied.

50.     Federal Defendants admit the facts found by the Court in the case captioned *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, 2:10-md-02179 (E.D. La.), and deny any allegations in Paragraph 50 inconsistent with the plain language, meaning, and context of that referenced court decision.

51.     Federal Defendants admit the facts found by the Court in the case captioned *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, 2:10-md-02179 (E.D. La.), and the statements made in the Final Programmatic Damage Assessment and Restoration Plan and Final Programmatic Environmental Impact Statement, and deny any allegations in Paragraph 51 contrary to the plain language, meaning, and context of those findings and documents.

52.     Federal Defendants admit the facts found by the Court in the case captioned *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, 2:10-md-02179 (E.D. La.), and the statements made in the Final Programmatic Damage Assessment and Restoration Plan and Final Programmatic Environmental Impact Statement, and deny any allegations in Paragraph 52 contrary to the plain language, meaning, and context of those findings and documents.

53.     Federal Defendants admit the facts found by the Court in the case captioned *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, 2:10-md-02179 (E.D. La.), and the statements made in the Final Programmatic Damage Assessment and

Restoration Plan and Final Programmatic Environmental Impact Statement, and deny any allegations in Paragraph 53 contrary to the plain language, meaning, and context of those findings and documents.

54.   Federal Defendants admit the facts found by the Court in the case captioned *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, 2:10-md-02179 (E.D. La.), and the statements made in the Louisiana Trustee Implementation Group Final Phase II Restoration Plan and Environmental Assessment #3.3, and deny any allegations in Paragraph 53 contrary to the plain language, meaning, and context of those findings and documents.

55.   Federal Defendants admit that harms from the spill to the marine and coastal species and environment persist. The remaining allegations in Paragraph 55 are vague and ambiguous as to the "Gulf economy" and are denied on that basis.

56.   The allegations in Paragraph 56 purport to characterize the Oil Pollution Act ("OPA"), which speaks for itself and is the best evidence of its contents.  Any allegations contrary to the plain language, meaning, and context of the statute are denied.

57.   The allegations in Paragraph 57 characterize the Natural Resource Damage Assessments procedures (43 C.F.R. § 11) and Oil Pollution Act (33 U.S.C. § 40), which speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the referenced regulation and statute are denied.

58.   The allegations in the first sentence of Paragraph 58 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are admitted. Federal Defendants admit the remaining allegations in Paragraph 58.

59.  With respect to the first sentence of Paragraph 59, Federal Defendants admit that, pursuant to OPA, the Louisiana Trust Implementation Group ("LA TIG") conducted a Natural Resources Damages Assessment ("NRDA") process. Federal Defendants deny any remaining allegations of the first sentence of Paragraph 59. The allegations in the second and third sentences purport to characterize the Programmatic Damage Assessment and Restoration Plan, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the Plan's plain language and meaning.

60.  The allegations in Paragraph 60 purport to characterize the consent decree in *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, MDL No. 2179, 2016 WL 1394949 (E.D. La. Apr. 4, 2016), which speaks for itself and is the best evidence of its contents.  Any allegations contrary to the plain language, meaning, and context of the consent decree are denied.

61.  Federal Defendants admit that: NRDA is a legal process under the Oil Pollution Act of 1990 (OPA) and, with respect to Louisiana, the Louisiana Oil Spill Prevention and Response Act of 1991 (LOSPRA); the OPA authorizes designated Natural Resource Trustees to act on behalf of the public as trustees for natural resources; the responsibilities of Natural Resource Trustees, include but are not limited to, conducting evaluations and assessments of damages resulting from "incidents" as defined in the OPA and making the environment and the public whole for injuries to natural resources and services resulting from "incidents"; the Louisiana Trustee Implementation Group ("LA TIG") was formed as part of the OPA process in response to Deepwater Horizon to focus on restoration actions in Louisiana; and the "LA TIG" includes both state and federal members.  Federal Defendants deny any remaining allegations in Paragraph 61.

13

62.   The allegations in Paragraph 62 purport to characterize the Draft EIS, which speaks for itself and is the best evidence of its contents.  Federal Defendants deny any allegations that are inconsistent with the plain language, meaning, and context of the Draft EIS.

63.   The allegations of Paragraph 63 purport to characterize the Final EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Final EIS.

64.   Federal Defendants admit that the Coastal Protection and Restoration Authority ("CPRA") submitted a Joint Permit Application seeking authorization of regulated activities associated with the MBSD Project pursuant to Section 10 of the Rivers and Harbors Act and Section 404 of the Clean Water Act. The remaining allegations in Paragraph 64 characterize the Joint Permit Application, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Joint Permit Application.

65.   The first three sentences of Paragraph 65 characterize the LA TIG's Strategic Plan for the Barataria Basin, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of that document. The allegations in the fourth sentence of Paragraph 65 purport to characterize an April 2017 LA TIG notice, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the April 2017 LA TIG notice.

66.   The allegations in Paragraph 66 purport to characterize the Bipartisan Budget Act of 2018, Pub. L. No. 115-123 in 2018, which speaks itself and is the best evidence of its contents.  Any allegations contrary to the plain language, meaning, and context of the statute are denied.

67.     Federal Defendants admit the allegations in the first sentence of Paragraph 67.  The remaining allegations in Paragraph 67 characterize the Fixing America's Surface Transportation Act ("FAST-41"), 42 U.S.C. § 4370m, *et seq.*, which speaks for itself and is the best evidence of its contents.  Any allegations contrary to the plain language, meaning, and context of the statute are denied.

68.     Due to vagueness and ambiguity with respect to the phrases "the ranges of several species" and "several of those species," Federal Defendants deny the allegations in Paragraph 68.

69.     Federal Defendants admit the allegations in the first and second sentences in Paragraph 69.  Federal Defendants deny the allegations in the third sentence due to the vagueness and ambiguity with respect to the phrase "within the analysis area for the MBSD Project."  The allegations in the fourth and fifth sentence characterize FWS's recovery plans for the piping plover, which are documents that speak for themselves and are the best evidence of their contents; any allegations contrary to the plain language, meaning, and context of the statute are denied.

70.     Federal Defendants admit the allegations in the first sentence of Paragraph 70.  The allegations in the second and third sentences characterize FWS's rules designating critical habitat for the piping plover, which are documents that speak for themselves and are the best evidence of their contents; any allegations contrary to the plain language, meaning, and context of the statute are denied.  Federal Defendants deny the allegations in the fourth sentence due to the vagueness and ambiguity with respect to the phrase "the analysis area for the MBSD Project."

71.     Federal Defendants admit the allegations in the first, second, third, and fourth sentences of Paragraph 71.  The allegations in the fifth, sixth, and seventh paragraph characterize FWS's

proposed critical habitat rules for the red knot, which are documents that speak for themselves and are the best evidence of their contents; any allegations contrary to the plain language, meaning, and context of the statute are denied.  Federal Defendants deny the allegations in the eighth sentence due to the vagueness and ambiguity with respect to the phrase "MBSD Project's analysis area."

72.     Federal Defendants admit the allegations in the first, second, and fourth sentences of Paragraph 72. In response to the allegations in the third sentence of Paragraph 72, Federal Defendants deny that Kemp's ridley sea turtles only migrate to nearshore areas of the Gulf of Mexico or northwestern Atlantic Ocean.

73.     Federal Defendants admit the allegations in the first, second, third, fourth, and fifth sentences of Paragraph 73.  The allegations in the sixth and seventh sentences of Paragraph 73 are too vague and ambiguous to permit a response and Federal Defendants deny them on that basis.

74.     Federal Defendants admit the allegations first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth sentences in the Paragraph 74.  With respect to the allegations in the twelfth sentence, due to vagueness with respect to the phrases "most prevalent" and "some evidence," Federal Defendants deny those allegations. With respect to the remaining allegations in the twelfth sentence, Federal Defendants admit that fibropapillomatosis is a threat to green sea turtles. The allegations in the eleventh and thirteenth sentences of Paragraph 74 are too vague and ambiguous to permit a response and Federal Defendants deny them on that basis.

75.     The allegations in Paragraph 75 purport to characterize the Draft EIS, which speaks for itself and is the best evidence of its contents.  Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Draft EIS.

76.   Federal Defendants admit that there has been public support and public opposition for the
MBSD Project, but deny any remaining allegations in the first sentence of Paragraph 76.  The
allegations in the second sentence of Paragraph 76 are vague and ambiguous to the extent that
they include quotations but do not identify the source of the purportedly quoted language, and
are denied on that basis. Federal Defendants deny any allegation that is inconsistent with the
plain language, meaning, and context of the document. The allegations in the third sentence of
Paragraph 76 are denied.

77.   The allegations in the first sentence of Paragraph 77 are vague and ambiguous to the extent
that they purport to reference the MBSD Project's "stated purpose," but fail to identify the
source for the referenced statement, and are denied on that basis. The allegations in the second
and third sentences of Paragraph 77 characterize the Draft EIS, which speaks for itself and is
the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent
with the plain language and meaning of the Draft EIS. Federal Defendants admit that Neptune
Pass is a crevasse on the Mississippi River south of the proposed MBSD Project intake, that
Neptune Pass enlarged during the period 2019 to 2022, and that Neptune Pass diverts between
approximately 16-20% of the Mississippi River's flow at that point in the river and that flow
from Neptune Pass enters Bay Denesse and/or Quarantine Bay. Federal Defendants aver that
the Corps decision-making process for the MBSD Project under a Clean Water Act Section
404 and Rivers and Harbors Act Section 10 permit was from receipt of the permit application
in June 2016 until issuance of the permit in December 2022. The remaining allegations in the
fourth, fifth, sixth and seventh sentences of Paragraph 77 are vague and ambiguous as to the
facts and impacts alleged, and are denied on that basis.

78.    The allegations of Paragraph 78 are vague and ambiguous, particularly to the extent they fail to define the phrases and terms "dynamic and ever-changing," "innate uncertainties," "various natural and physical processes," "influence each other," "regulate the Mississippi River Delta," "complex system," and to the extent that they include quotations but do not identify the source of the purportedly quoted language, and are denied on that basis.

79.    The allegations of Paragraph 79 purport to characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. To the extent the allegations are inconsistent with the plain language, meaning, and context of the Draft EIS, Federal Defendants deny them on that basis.

80.    The allegations of Paragraph 80 purport to characterize the DEIS and FEIS, which speak for themselves and are the best evidence of their contents.  To the extent the allegations are inconsistent with the plain language, meaning, and context of the DEIS or FEIS, the allegations are denied.

81.    Federal Defendants deny the allegations in the first, second, third, fourth, fifth, and eighth sentences of Paragraph 81. The allegations in the sixth and seventh sentences purport to characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the Draft EIS are denied.

82.    The allegations in Paragraph 82 purport to characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Draft EIS.

83.    The allegations in Paragraph 83 characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the Draft EIS.

84.   The allegations in Paragraph 84 characterize the Draft EIS and Mitigation and Monitoring Plan, which speaks for themselves and are the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of those documents.

85.   The allegations in the first, second, third, fourth, eleventh, twelfth, and thirteenth sentences of Paragraph 85 characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the Draft EIS. The allegations in the fifth sentence of Paragraph 85 characterize EPA's Enforcement and Compliance History Report, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of EPA's Enforcement and Compliance History Report. The allegations in the sixth, seventh, eighth, ninth, and tenth sentences of Paragraph 85 characterize the articles cited in footnotes 6, 7, 8, and 9, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the articles.

86.   The allegations in the first, second, third, fourth, fifth, and sixth sentences of Paragraph 86 characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the Draft EIS. Federal Defendants admit that, as a general matter, sediment can contain contaminants, but deny any allegation in the seventh sentence alleging that Draft EIS failed to comply with NEPA in its assessment of that issue here.  Federal Defendants deny the allegations in the eighth and ninth sentences of Paragraph 86     .

87.    The allegations in Paragraph 87 characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Draft EIS.

88.    The allegations in Paragraph 88 characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Draft EIS.

89.    The allegations in Paragraph 89 characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Draft EIS.

90.    The allegations in Paragraph 90 characterize the Draft EIS and Biological Assessment, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Draft EIS and Biological Assessment.

91.    The allegations in the first and second sentences of Paragraph 91 characterize the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Draft EIS. The allegations in the third, fourth, fifth, and eighth sentences of Paragraph 91 are vague and ambiguous, particularly to the extent that they (i) fail to define the phrases "very low concentrations," "shown to cause," "affect their growth and reproduction," (ii) fail to identify the referenced "organisms" in which PFAS are "known to accumulate," and (iii) reference but fail to identify sources of the purportedly "best available science," and Federal Defendants deny them on that basis. The allegations in the sixth, seventh, ninth, tenth, eleventh, and twelfth sentences and footnote 10 of Paragraph 91 characterize provisional  Drinking Water

Health Advisories, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the provisional and final Drinking Water Health Advisories.

92. The allegations in the first sentence of Paragraph 92 are vague and ambiguous, particularly to the extent that they fail to define or explain the phrases "in particular," "is known," and "highly contaminated," and Federal Defendants deny them on that basis. The allegations in the second and third sentence characterize a Water Collaborative study, which speaks for itself and is the best evidence of its contents. To the extent the allegations are inconsistent with the plain language, meaning, and context of the Water Collaborative study, they are denied.

93. Federal Defendants admit that Jurisich Oysters, LLC submitted the referenced comments. The remaining allegations in Paragraph 93 purport to characterize the June 3, 2021 comment letter on the Draft EIS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the June 3, 2021 comment letter.

94. The allegations in Paragraph 94 characterize public comments on the Draft EIS, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the public comments.

95. The allegations in Paragraph 95 characterize public comment letters on the Draft EIS, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the public comment letters.

96.     The allegations in Paragraph 96 characterize public comment letters on the Draft EIS, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the public comment letters.

97.     The allegations in Paragraph 97 characterize public comment letters on the Draft EIS, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the public comment letters.

98.     The allegations in Paragraph 98 characterize public comment letters on the Draft EIS, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the public comment letters.

99.     Federal Defendants admit the first sentence of Paragraph 99. The remaining allegations in Paragraph 99 characterize the Final EIS for the MBSD Project, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Final EIS.

100.    The allegations in Paragraph 100 characterize the Final EIS for the MBSD Project, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Final EIS.

101.    The allegations in Paragraph 101 characterize the Final EIS for the MBSD Project, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Final EIS.

102.    The allegations in Paragraph 102 characterize the Final EIS for the MBSD Project, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Final EIS.

103.    The allegations in the first and fourth sentences of Paragraph 103 characterize the Final EIS for the MBSD Project, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Final EIS. The allegations in the second and third sentences of Paragraph 103 characterize a Draft Environmental Assessment, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the draft Environmental Assessment.

104.    The allegations in Paragraph 104 characterize the Final EIS for the MBSD Project, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Final EIS.

105.    The allegations in the first sentence of Paragraph 105 characterize the Final EIS for the MBSD Project, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Final EIS. The allegations in the second sentence of Paragraph 105 characterize an EPA strategic roadmap, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the EPA strategic roadmap. The allegations in the third sentence of Paragraph 105 characterize the Draft Aquatic Life Criteria for PFOA and PFOS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Draft Aquatic Life Criteria for PFOA and

PFOS. The allegations in the fourth sentence of Paragraph 105 characterize EPA's final PFAS Health Advisories, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of EPA's final PFAS Health Advisories. The allegations in footnote 11 characterize a proposed rule, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the proposed rule.

106. The allegations in Paragraph 106 characterize the Final EIS for the MBSD Project, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language, meaning, and context of the Final EIS.

107. The allegations in Paragraph 107 characterize the Final EIS and Biological Opinions, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the Final EIS and Biological Opinions.

108. The allegations in the first, second, third, fourth, and seventh sentences of Paragraph 108 characterize the FWS Biological Opinion, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the FWS Biological Opinion. The allegations in the fifth and sixth sentences of Paragraph 108 are too vague and ambiguous to permit a response, and Federal Defendants deny them on that basis.

109. The allegations in the first and fourth sentences of Paragraph 109 characterize the FWS Biological Opinion, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the

FWS Biological Opinion. The allegations in the second sentence of Paragraph 109 are too vague and ambiguous to permit a response, and Federal Defendants deny them on that basis. The allegations in the third sentence of Paragraph 109 characterize the 2008 Recovery Plan for the Northwest Atlantic loggerhead sea turtle DPS, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the 2008 Recovery Plan for the Northwest Atlantic loggerhead sea turtle DPS.

110.   The allegations in the first, second, fourth, and seventh sentences of Paragraph 110 characterize the NMFS Biological Opinion, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the NMFS Biological Opinion. The allegations in the third, fifth, and sixth sentences of Paragraph 108 are too vague and ambiguous to permit a response, and Federal Defendants deny them on that basis.

111.   Due to vagueness and ambiguity with respect to the phrase "repeatedly occurred near the proposed MBSD Project intake," Federal Defendants deny those allegations in the first sentence of Paragraph 111.  The remaining allegations in Paragraph 111 characterize the Biological Opinions from FWS and NMFS, which speak for themselves and are the best evidence of their contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of the Biological Opinions.

112.   Federal Defendants deny the allegations in paragraph 112.

113.   In response to the first sentence of Paragraph 113, Federal Defendants admit that they received a letter from Plaintiffs dated November 7, 2023. The remaining allegations in Paragraph 113 characterize Plaintiff's November 7, 2023 letter, a document that speaks for itself and is the

best evidence of its contents. Any allegations contrary to the plain language, meaning, and context of the November 7, 2023 letter are denied.

114.  Federal Defendants' responses to Paragraphs 1 through 113 are reasserted and incorporated herein by reference.

115.  The allegations in Paragraph 115 are denied.

116.  The allegations in Paragraph 116 are denied.

117.  The allegations in Paragraph 117 are denied.

118.  The allegations in Paragraph 118 are denied.

119.  The allegations in Paragraph 119 are denied.

120.  The allegations in Paragraph 120 are denied.

121.  Federal Defendants' responses to Paragraphs 1 through 120 are reasserted and incorporated herein by reference.

122.  The allegations in Paragraph 122 contain Plaintiffs' characterizations of this action to which no response is required. To the extent a response is required, the allegations are denied.  The allegations in paragraph 122 also characterize FWS's BiOp, which speaks for itself and is the best evidence of its contents. Federal Defendants deny any allegation that is inconsistent with the plain language and meaning of FWS's BiOp.

123.  The allegations in Paragraph 123 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations in Paragraph 123 also characterize FWS's BiOp, the ESA, its implementing regulations thereunder, and the APA, which are documents, statutes and regulations that speak for themselves and are the best evidence of their contents.  Any allegations contrary to the plain

language, meaning, and context of the FWS BiOp, the ESA, its implementing regulations, and the APA are denied.

124. Federal Defendants' responses to Paragraphs 1 through 123 are reasserted and incorporated herein by reference.

125. The allegations in Paragraph 125 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations in Paragraph 125 also characterize NMFS's Biological Opinion, the ESA, and its implementing regulations thereunder, a document, statutes, and regulations that speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the NMFS Biological Opinion, the ESA, and implementing regulations are denied.

126. The allegations in Paragraph 126 constitute legal conclusions to which no response is required. To the extent a response is required, the allegations are denied. The allegations in Paragraph 126 also characterize NMFS's Biological Opinion, the ESA, and its implementing regulations thereunder, a document, statutes and regulations that speak for themselves and are the best evidence of their contents. Any allegations contrary to the plain language, meaning, and context of the NMFS Biological Opinion, the ESA, and implementing regulations are denied.

## **PRAYER FOR RELIEF**

The remainder of the Complaint constitutes Plaintiffs' requests for relief, to which no response is required. To the extent a further response is required, Federal Defendants deny that Plaintiffs are entitled to the relief requested or to any relief whatsoever.

## <u>GENERAL DENIAL</u>

If any allegation is not admitted or specifically responded to, Defendants deny that allegation.

## <u>DEFENSES</u>

1) The Court lacks subject matter jurisdiction.

2) Plaintiffs' claims may be barred by the applicable statute of limitations.

3) Plaintiffs may have failed to state a claim for relief.

4) Plaintiffs may have failed to join an indispensable party.

5) Plaintiffs may have failed to comply with 16 U.S.C. § 1540(g).


Dated: May 28, 2024.  Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

ANGELA ELLIS (DC Bar No. 1670713)
AMANDA RUDAT (ME Bar No. 010329)
Trial Attorneys
Natural Resources Section
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
202-305-0479 (Ellis)
202-532-3201 (Rudat)
angela.ellis@usdoj.gov
amanda.rudat@usdoj.gov

*/s/ Coby Howell*
COBY HOWELL (WY Bar No. 6-3589)
Senior Trial Attorney
Wildlife and Marine Resources Section
United States Department of Justice
1000 SW Third Avenue
Portland, OR 97204-2902

28

503-956-4170
coby.howell@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court via CM/ECF system, which will send notification of such to the attorneys of record.

*/s/ Coby Howell*
COBY HOWELL