## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JURISICH OYSTERS, LLC, et al.** | |
| *Plaintiffs,* | **CIVIL ACTION NO.:  24-106** |
| *v.* | **SECTION "E" (2)** |
| **U.S. ARMY CORPS OF ENGINEERS, et al.** | **JUDGE MORGAN** |
| *Defendants,* | **MAGISTRATE JUDGE CURRAULT** |
| **and** | |
| **ENVIRONMENTAL DEFENSE FUND, et al.,** | |
| *Intervenor-Defendants.* | |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ..........................................................................................................1

MOVANTS FOR INTERVENTION ...............................................................................1

BACKGROUND ............................................................................................................3

ARGUMENT .................................................................................................................6

I.      MOVANTS SATISFY THE REQUIREMENTS FOR INTERVENTION
AS A MATTER OF RIGHT ..............................................................................7

        A.     Movants' Application for Intervention is Timely .............................7

        B.     Movants Have Direct, Substantial, and Legally Protectable Interests
in the Proceedings ..........................................................................8

        C.     Plaintiffs' Requested Relief Would Impair Movants' Ability to Protect
Their Interests ...............................................................................10

        D.     Movants' Interests Are Not Adequately Represented by Existing Parties ......11

II.     ALTERNATIVELY, THE COURT SHOULD PERMIT MOVANTS TO
INTERVENE PERMISSIVELY .......................................................................19

CONCLUSION.............................................................................................................20

## TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Abita Springs v. U.S. Army Corps of Eng'rs*, Civ. A. No. 15-0451,
2015 WL 13533518 (E.D. La. Sept. 25, 2015) ...............................................................13

*Am. Petroleum Inst. v. Dep't of Interior*, No. 2:21-cv-02506,
2022 WL 1297802 (W.D. La. Apr. 29, 2022).................................................................19

*Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986)...................7, 8

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014)................................................. *passim*

*Coal. of Ariz./N.M. Counties v. Dep't of Interior*,
100 F.3d 837 (10th Cir. 1996). ........................................................................................9

*Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312 (D.C. Cir. 2015) .......12

*Diamond v. D.C.*, 792 F.2d 179 (D.C. Cir. 1986).........................................................13

*Entergy Gulf States La., L.L.C. v. U.S. E.P.A.,* 817 F.3d 198 (5th Cir. 2016)...............12

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ...................................8, 12, 12

*Gen. Land Off. of Tex. v. FWS*, No. A-17-CA-538-SS,
2017 WL 10741921 (W.D. Tex. Nov. 30, 2017)...........................................................19

*Gulf Restoration Network v. Salazar*, 683 F.3d 158 (5th Cir. 2012) ............................10

*Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 179 F. Supp. 3d 656 (E.D. La. 2016) ................19

*Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416 (5th Cir. 2002) ............13

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) .............................8

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,
on April 20, 2010*, MDL No. 2179, 2016 WL 1394949 (E.D. La. 2016) ........................5

*John Doe No. 1 v. Glickman,* 256 F.3d 371 (5th Cir. 2001) ....................................12, 13

*Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994 (8th Cir. 1993) ..............13

*Miller v. Vilsack*, No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022) ......................6, 8, 11

*Nat. Res. Def. Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977) .................................13

iii

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
732 F.2d 452 (5th Cir. 1984) ................................................................8

*Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998) ............................................7

*Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525 (9th Cir. 1983) ................8, 9

*Sierra Club v. City of San Antonio*, 115 F.3d 311 (5th Cir. 1997) ................13

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ...............................7, 13

*State v. Biden*, 338 F.R.D. 219 (W.D. La. 2021) ...............................7, 11

*Tex. v. U.S.*, 805 F.3d 653 (5th Cir. 2015) .............................................11

*Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*,
332 F.3d 815 (5th Cir. 2003) ...............................................................19

*U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980) .....................11

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
834 F.3d 562 (5th Cir. 2016) ........................................................6, 7, 11

*Wash. State Bldg. & Constr. Trades Council v. Spellman,* 684 F.2d 627 (9th Cir. 1982) .............8

*W. Energy All. v. Zilke*, 877 F.3d 1157 (10th Cir. 2017) .............................9

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................... *passim*

6 James W. Moore, et al., Moore's Federal Practice, § 24.03[2][c] (3d ed. 2008)........................9

## INTRODUCTION

Environmental Defense Fund ("EDF"), Louisiana Wildlife Federation ("LWF"), Orleans Audubon Society, and Cajun Fishing Adventures, Inc. ("Cajun Fishing Adventures", and together with EDF, LWF, and Orleans Audubon Society, "Movants"), by and through undersigned counsel, respectfully move under Federal Rule 24 to intervene in this action. Movants—a coalition of conservationists, commercial and recreational sportsmen, and local residents and business owners—seek intervention because, among other reasons, enjoining the implementation of the Mid-Barataria Sediment Diversion ("MBSD")—will likely have a substantial and direct adverse impact on Movants' legally cognizable interests in restoring coastal Louisiana and the Mississippi River Delta region by, among other things, restoring natural deltaic processes in the Barataria Basin and protecting the environment and building natural resilience for people, animals, plants, fisheries, and infrastructure in southeast Louisiana. Movants' interests also include the recreational, aesthetic, scientific, and economic interests of themselves and/or their members. Moreover, Movants have an interest in ensuring Defendants' compliance with the National Environmental Policy Act ("NEPA") and the Endangered Species Act ("ESA") that differs from the interests of both Plaintiffs and Defendants. Movants seek intervention as of right under Rule(24)(a)(2), or, alternatively, permissive intervention under Rule 24(b).

## MOVANTS FOR INTERVENTION

**ENVIRONMENTAL DEFENSE FUND, INC. ("EDF")**, is a 501(c)(3) non-profit non-partisan environmental organization dedicated to addressing the most serious environmental problems anchored in science and law. EDF has worked to protect human health and the environment in Louisiana for decades, has staff in Louisiana, and has thousands of U.S. members with more than 2,250 members residing in Louisiana, including areas of southeast Louisiana that

will be directly impacted by the MBSD. Daniel Aff. ¶¶ 3-5, attached hereto as Exh. A. EDF is dedicated to leveraging its expertise in science, law, and economics to stabilize the climate, strengthen the ability of people and nature to thrive, and support people's health. *Id.* ¶ 3. EDF has been engaged in the MBSD project since its inception, demonstrated by years of collaborative work by its staff; a history of public comment letters; a portfolio of educational content developed around the MBSD; research to help answer questions on viability and adaptive management of sediment diversions; and through collaboration to support Louisiana's Coastal Master Plan including support of the MBSD. *Id.* ¶¶ 6-21.

**LOUISIANA WILDLIFE FEDERATION, INC. ("LWF")**, is a 501(c)(3) non-profit organization dedicated to the conservation of Louisiana's wildlife and natural resources. Triche Aff. ¶ 3, attached hereto as Exh. B. LWF's approximately 11,000 members—more than half of whom reside in Louisiana's coastal zone parishes—represent a broad constituency of hunters, anglers, campers, birders, boaters, and other outdoor-oriented citizens. *Id.* ¶ 4. LWF is an affiliate organization of the National Wildlife Federation with a mission "to restore, preserve, develop, and increase the birds, fish, game, forestry, wildflowers and all other wild life resources of the State of Louisiana." *Id.* ¶¶ 3-4. Since the 1980s, LWF has publicly supported efforts to divert water and sediment from the Mississippi River to benefit surrounding wetlands through messages to its members, press releases, letters to legislative delegations, and agency representatives. *Id.* ¶¶ 5-18.

**ORLEANS AUDUBON SOCIETY** is a 501(c)(3) non-profit organization based in southeast Louisiana. Muth Aff. ¶ 2, 4-5, attached hereto as Exh. C. Orleans Audubon Society is a Chapter of the National Audubon Society, currently has 1,052 conservation-minded members, and services eleven Parishes, including six Parishes wholly or partly in the Barataria Basin: Plaquemines, Jefferson, Orleans, St. John the Baptist, St. Charles and Lafourche. *Id.* ¶ 5. Orleans

Audubon Society is dedicated to conserving wildlife and wild places of the southeastern United States and to fostering an appreciation of nature. Orleans Audubon Society and its members have advocated for the protection and restoration of the resources of the Barataria Basin for nearly 75 years, including through specific support of the Mid-Barataria Sediment Diversion. *Id.* ¶¶ 4, 13-17.

**CAJUN FISHING ADVENTURES, INC. ("CAJUN FISHING ADVENTURES")** is a lodge and charter boat operator based out of Buras, Plaquemines Parish, Louisiana that provides ecotourism, hunting, and fishing experiences in the Mississippi River Delta. Lambert Aff. ¶¶ 5, 8, attached hereto as Exh. D. Cajun Fishing Adventure's officers, employees, and clients enjoy recreational boating, hunting, and fishing in the Mississippi River Delta and its business model is inseverable from the wildlife and habitats of the Barataria Basin. *Id.* ¶¶ 4-6. Cajun Fishing Adventures historically conducted provided fishing, hunting, and nature-viewing tours west of the Mississippi River in the Barataria Basin, where area where the MBSD is intended to restore and maintain. *Id.* ¶ 6. However, in recent years, land loss and connected ecological changes in the Barataria Basin have driven Cajun Fishing Adventures to transition nearly 100% of its operations to the Eastern side of the River. *Id.*

## BACKGROUND

The Barataria Basin is a complex wetland ecosystem that supports ecological, economic, and cultural resources with regional, national, and global importance. These wetlands provide habitat for wildlife, birds, and fisheries of great biological and commercial significance. Louisiana's coastal wetlands—including the Barataria Basin—serve as natural solutions to curbing climate impacts and improving community resilience as they sequester greenhouse gases and serve as a natural buffer against storms and other flood risks for communities and infrastructure in

3

southeast Louisiana. These wetlands also provide habitat for wildlife, birds, and fisheries of great biological and commercial significance. Since approximately 1950, the Basin and surrounding Delta regions have been in an increasingly rapid state of deterioration, which has caused large areas of the marsh to convert to open water. The entire Mississippi River Delta, including the Barataria Basin, was built by a steady deposition of riverine sediment over the past approximately 7,000 to 10,000 years. The comparatively swift channelization of the river in the interest of navigation and flood protection severed the Delta wetlands from their lifeblood of sediment and freshwater.

Since at least the 1980s, it has been recognized that reconnecting the Mississippi River to Louisiana's coastal marshes and reestablishing natural deltaic processes is an important component of the efforts being made to restore or maintain these wetlands. In 1984, the U.S. Army Corps of Engineers published a report evaluating the feasibility of using large-scale river diversions to benefit wildlife and fisheries in southeast Louisiana. In 1998, the State of Louisiana formally proposed several large-scale diversions in the Barataria Basin for marsh and barrier island restoration. These government efforts were driven in part by the advocacy and support of local scientists and conservationists, including Movants and their members. *See* Daniel Aff. ¶ 7; Triche Aff. ¶¶ 5-10; Muth Aff. ¶¶ 12-13.  Over the past forty-five years, Movants have invested significant resources into supporting sediment diversion programs in Louisiana, including the Mid-Barataria Sediment Diversion ("MBSD"). Daniel Aff. ¶¶ 5-20; Triche Aff. ¶¶ 5, 16-18; Muth Aff. ¶¶ 11-15. This support only intensified after 2010 when the Deepwater Horizon ("DWH") oil spill caused large-scale contamination to natural resources in the northern Gulf of Mexico and coastal Louisiana.  Daniel Aff. ¶ 8; Muth Aff. ¶ 17.  The DWH disaster further exposed and exacerbated the severity of threats confronting the Mississippi River Delta. Some of the most significant

4

destruction was concentrated in the Barataria Basin.  Due to Movants' history of science and advocacy and direct recreational, aesthetic, scientific, and economic ties with the regions most affected by the contamination, they again stepped into principal roles in advocating for restoration and protection of the Delta's land, wildlife, communities, and infrastructure.  *See* Daniel Aff. ¶ 8; Muth Aff. ¶ 17; Lambert Aff. ¶ 12.  Movants have strongly advocated for and supported the Louisiana Coastal Restoration Authority's Coastal Master Plan, and specifically the MBSD's inclusion in that plan.  *See* Daniel Aff. ¶¶ 6, 8; Triche Aff. ¶¶ 15, 17; Muth Aff. ¶ 14; Lambert Aff. ¶¶ 9-10.

Following the DWH disaster, this Court entered a Consent Decree pursuant to which BP agreed to pay up to $8.8 billion in natural resource damages over a 15-year period. *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2016 WL 1394949 (E.D. La. 2016). The Consent Decree and corresponding Programmatic Damage Assessment and Restoration Plan dictate that these proceeds must be distributed to restoration efforts within specific areas and for specific project types; the largest tranche of funds—more than $4 billion—must go to restoring and conserving wetlands, coastal, and nearshore habitats.

In 2016, the Louisiana Coastal Protection and Restoration Authority ("CPRA") submitted a Joint Permit Application to the U.S. Army Corps of Engineers proposing to construct, operate, and maintain the MBSD.  In evaluating that application, the Corps initiated a NEPA evaluation process, publishing a Draft Environmental Impact Statement on March 5, 2021 and a Final Environmental Impact Statement ("FEIS") on September 23, 2022.  Among other things, the FEIS compared the impacts of the Preferred Alternative to various other alternatives, as well as with the No Action Alternative.  Conservationists, scientists, and residents of southeast Louisiana—

including Movants—have known and warned of for years that no action is the most harmful course for the land, wildlife, people, and infrastructure of coastal Louisiana.  On December 19, 2022, the Corps published a Record of Decision ("ROD") authorizing the Project, as well as the September 2022 Final Environmental Impact Statement (the "EIS") underlying the ROD.  The MBSD is projected to create 6,260 acres of land in the mid-Barataria Basin in its first 10 years, with a maximum of about 17,300 acres (27 sq mi) of land built in the mid-Barataria Basin by 2050.  *See* EIS, Executive Summary at ES.2.  On January 11, 2024, Plaintiffs filed a complaint requesting, *inter alia*, that Defendants be enjoined from taking any action to implement the MBSD.

## ARGUMENT

Federal Rule of Civil Procedure 24(a) requires a federal court to permit intervention of a non-party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2).  Rule 24(b) permits a federal court to allow intervention of a non-parties that tender "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "Rule 24 is to be liberally construed, with doubts resolved in favor of the proposed intervenor." *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *2 (5th Cir. Mar. 22, 2022); *accord Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). "The inquiry is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate." *Brumfield*, 749 F.3d at 341 (internal quotation marks omitted). Federal courts "should allow intervention when no

one would be hurt and the greater justice could be attained" *Wal-Mart Stores, Inc.*, 834 F.3d at 565.

I.    **MOVANTS SATISFY THE REQUIREMENTS FOR INTERVENTION AS A MATTER OF RIGHT.**

The Fifth Circuit utilizes a four-part test to evaluate motions to intervene under Rule 24(a)(2): (1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *Brumfield*, 749 F.3d at 341-42. Movants satisfy each of the elements.

A.    **Movants' Application for Intervention is Timely**

This intervention motion is timely.  In assessing timeliness, Fifth Circuit courts consider: "(1) the length of time applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to applicants if their motion is denied; and (4) any unusual circumstances." *Ruiz v. Estelle*, 161 F.3d 814, 827 (5th Cir. 1998). "The timeliness inquiry is contextual; absolute measures of timeliness should be ignored." *State v. Biden*, 338 F.R.D. 219, 223 (W.D. La. 2021). Of predominant concern is the potential for prejudice caused to the existing parties; notably, "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994).

In *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverages Commission*, the Fifth Circuit found the intervenor's motion was timely when it was filed "before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded." 834 F.3d at 565-66. Furthermore, in *Association of Professional Flight Attendants v. Gibbs*, intervention

was timely where five months had lapsed since the movants knew or should have known of their interests in the case. 804 F.2d 318 (5th Cir. 1986); *see also Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (finding delays of "37 and 47 days…are not unreasonable.").

Discovery has not commenced, and no meaningful events have occurred in the case. Indeed, Movants' intervention accords with the case scheduling order which allows until July 15, 2024 for all third-party actions, cross-claims, and counterclaims. R. Doc. 19. As a result, "timeliness is not at issue." *Brumfield*, 749 F.3d at 342.

### B.  Movants have Direct, Substantial, and Legally Protectable Interests in the Proceedings

Movants have a "direct, substantial, and legally protectable interest" in the subject of the action. *Brumfield*, 749 F.3d at 343. For such an interest to be "legally protectable," the claim asserted by the applicant must be one as to which the applicant is the real party in interest. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984). This inquiry "is a flexible one, which focuses on the particular facts and circumstances surrounding each application measured by a practical rather than technical yardstick." *Miller*, 2022 WL 851782, at *2. Courts have recognized that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (finding intervenors were properly allowed to intervene as a matter or right because the public interest group had been active in the process of listing the species at issue on the endangered species list) (citing *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 527 (9th Cir. 1983); *Wash. State Bldg. & Constr. Trades Council v. Spellman,* 684 F.2d 627, 630 (9th Cir. 1982)). In *Sagebrush Rebellion,* the National Audubon Society was deemed to be entitled to intervene as a matter of right because of its participated in

the administrative process the Interior Secretary followed to establish a conservation area for birds of prey that was being challenged in the lawsuit. 713 F.2d at 526–27.

Moreover, courts have "declared it indisputable" that "a prospective intervenor's environmental concern is a legally protectable interest." *W. Energy All. v. Zilke*, 877 F.3d 1157, 1165 (10th Cir. 2017). "The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield*, 749 F.3d at 344 (quoting 6 James W. Moore, et al., Moore's Federal Practice, § 24.03[2][c], at 24-34 (3d ed. 2008)). For example, in *Coalition of Arizona/New Mexico Counties v. Department of Interior*, the Tenth Circuit held that a wildlife photographer and amateur biologist who had photographed and studied the Mexican Spotted Owl and engaged in owl-related advocacy had a "direct and substantial interest" in a lawsuit concerning listing of the owl as an endangered species due to his "persistent record of advocacy for [the environmental] protection[s]" despite having "little economic interest in the Owl itself." 100 F.3d 837, 841 (10th Cir. 1996).

As a matter of law, Movants have direct, substantial, and legally protectable interests arising from their long history of advocacy for and engagement with coastal protection and restoration in Louisiana and specifically the MBSD. Movants have decades of direct and substantial connections to the affected area of the MBSD and have persistently supported the MBSD for decades.  *See* Daniel Aff. ¶¶ 5-20; Triche Aff. ¶¶ 5-18; Muth Aff. ¶¶ 11-16, 21, 23-24, 28; Lambert Aff. ¶¶ 2-8, 12-14.  This has included, but it not limited to, (1) principal roles in coastal restoration policy development in Louisiana, including specifically for diversions and the MBSD; (2) campaigns to increase public understanding of and approval for coastal restoration, diversions, and specifically for the MBSD; (3) public outreach, education programs, and research related to sediment diversions, flood management, adaptive management, and the economic

benefit of the MBSD for Plaquemines Parish, (4) formal and informal partnerships and advisory roles with government agencies and non-governmental organizations and coalitions, (5) participation in and support for Louisiana's Coastal Master Plans and the inclusion of and funding for the MBSD as part of those Plans and (6) submission of comments, research, and other educational and scientific materials to government agencies regarding the MBSD and other coastal restoration projects, as well as congressional testimony on behalf of the MBSD and coastal restoration generally in Louisiana. *See* Daniel Aff. ¶¶ 5-21; Triche Aff. ¶¶ 5-18; Muth Aff. ¶¶ 11-28; Lambert Aff. ¶¶ 9-13. Further, Movants' members have established recreational, aesthetic, and research interests in the Barataria Basin. *See* Daniel Aff. ¶ 2-5, 18, 20-21; Triche Aff. ¶ 4; Muth Aff. ¶¶ 5, 11, 18-27. Movant Cajun Fishing Adventures also has direct and substantial recreational, aesthetic, and economic interests in the Basin and in the disposition of this action as an ecotourism business in Plaquemines Parish, with employees and customers that are avid sportsmen, naturists, and residents of southeast Louisiana. Lambert Aff. ¶¶ 2-8. This Circuit recognizes these types of interests as legally protectable. *See, e.g.*, *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 167 (5th Cir. 2012).

### C. Plaintiffs' Requested Relief Would Impair Movants' Ability to Protect Their Interests

Proposed intervenors must be "so situated that the disposition of the action may, as a practical matter, impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). Notably, the requisite showing is "only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Brumfield*, 749 F.3d at 345 n.2.

In their Complaint, Plaintiffs request, *inter alia*, that Defendants be enjoined "from taking any action to implement the Project." Compl. at ¶ 2. An injunction would impair Movants' protected interests in rebuilding land and sustaining the marsh that still exists through the MBSD,

implementation of which Movants and their members have advocated for since the Project's

inception and are on record supporting based on the FEIS and ROD. *See State*, 338 F.R.D. at 22

("Arguably, a determination of [the federal government's authority to pause oil and gas leasing in

the Gulf] could impair or impede [the] Conservation Groups' ability to protect th[eir] interest.").

Furthermore, the "No Action" Alternative of the FEIS outlines the accelerated wetland

deterioration and deltaic collapse that is likely to occur if the MBSD is not implemented.

Disappearance of these wetlands would impair Movants' direct, substantial, and legally protectable

interests in protecting the people, environment, and the ecosystems in Louisiana's coastal zone

and building natural resilience for people, animals, plants, fisheries, and infrastructure in southeast

Louisiana. Moreover, deterioration of wetlands in the Barataria Basin would also impair the direct

recreational, aesthetic, scientific, and economic interests of Movants and Movants' members that

live, work, and recreate in the affected area.

### D.      Movants' Interests Are Not Adequately Represented by Existing Parties

Finally, a proposed intervenor must show that its interest is inadequately represented by

the existing parties. This burden is "minimal," but "cannot be treated as so minimal as to write the

requirement completely out of the rule." *Miller*, 2022 WL 851782, at *2. "The movant need not

show that the representation by existing parties will be, for certain, inadequate." *Brumfield*, 749

F.3d at 345. Indeed, a proposed intervenor "need only show that 'the representation may be

inadequate." *Wal-Mart Stores, Inc.*, 834 F.3d at 569 (quoting *Tex. v. U.S.*, 805 F.3d 653, 662 (5th

Cir. 2015)); *see also U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (stating

that a petitioner "ordinarily should be allowed to intervene unless it is clear that the party will

provide adequate representation for the absentee").

The Fifth Circuit has established two presumptions of adequate representation that proposed intervenors must overcome. *Edwards*, 78 F.3d at 1005. "First, when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises." *Id.* This presumption is not applicable to Movants because "[t]his presumption, and the heightened showing required to overcome it, is restricted…to those suits involving matters of sovereign interest." *Edwards*, 78 F.3d at 1005. This case does not involve matters of sovereign interests or governmental representation of the Movants' interests. *See e.g. Entergy Gulf States La., L.L.C. v. U.S. E.P.A.,* 817 F.3d 198, 203-04 (5th Cir. 2016) ("[T]here is no suggestion EPA is a representative of Sierra Club by law[.]"). Instead, this case involves governmental agencies, and the Fifth Circuit has pronounced that the presumption of adequate representation does not apply to government agencies, such as the EPA and USDA. *Id.* at 206 n.2 ("This Court has not required a stronger showing of inadequacy in other cases where a governmental agency is a party."); *John Doe No. 1 v. Glickman,* 256 F.3d 371, 380-81 (5th Cir. 2001) (concluding that the "USDA's representation of the [movant] may be inadequate" and finding the movant had established the right to intervene).

Second, adequate representation is presumed "when the would-be intervenor has the same ultimate objective as a party to the lawsuit. In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Edwards*, 78 F.3d at 1005. A showing of "differences in the objectives" of an intervenor and existing party establishes that representation may be inadequate. *Wal–Mart Stores, Inc.*, 834 F.3d at 569. It is well established that courts "look skeptically on governmental entities serving as adequate interests for private parties." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015). Courts routinely find that the narrow interests of private

12

entities are not adequately represented by government parties with broad mandates to protect the public interest. *See, e.g.*, *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 907, 912 (D.C. Cir. 1977) (stressing that even when the interest of a federal agency and potential intervenor can be expected to coincide, "that does not necessarily mean [ ] adequacy of representation is ensured for purpose of Rule 24(a)(2)"); *Diamond v. D.C.*, 792 F.2d 179, 192-93 (D.C. Cir. 1986) (holding that representation was inadequate where the would-be intervenor was "seeking to protect a more narrow and 'parochial' financial interest not shared by the citizens of the District of Columbia"); *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994 (8th Cir. 1993) (holding that representation was inadequate where landowners sought "to protect local and individual interests not shared by the general citizenry of Minnesota").

Indeed, the Fifth Circuit has often held that "a government defendant does not adequately represent the interest of a private entity, even if they seek the same ultimate outcome." *Abita Springs v. U.S. Army Corps of Eng'rs*, Civ. A. No. 15-0451, 2015 WL 13533518, at *3 (E.D. La. Sept. 25, 2015) (citing *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416 (5th Cir. 2002); *John Doe No. 1*, 256 F.3d 371; *Sierra Club v. City of San Antonio*, 115 F.3d 311 (5th Cir. 1997); *Espy*, 18 F.3d 1202. Even where the same outcome is sought and the interests of the movant are similar to those of the government, "the Fifth Circuit has found that the government must represent the broad public interest, not just the economic concerns of the private entities." *Abita Springs*, 2015 WL 13533518, at *3 (citing *Espy*, 18 F.3d at 1208; *Heaton*, 297 F.3d at 425). For instance, in *Abita Springs*, the Court found that the movant's interests diverged from the Corp's "statutory responsibility in issuing permits for drilling in the nation's waters is to protect the public interest and consider the needs and welfare of the people." *Abita Springs*, 2015 WL 13533518, at *3.

13

As in *Abita Springs*, the federal agencies' interests in this matter relate to their statutory duties related to permitting. The agencies' objective is to protect the record of decision and final determinations of the FEIS. Movants' interests are both narrower and could diverge from the federal agencies, and therefore are inadequately represented by the existing parties. Movants' interests include local concerns for restoration and protection of the marshlands, people, animals, fisheries, and plants of southeastern Louisiana, and the Barataria Basin in particular.

Moreover, Movants' interest in the government's compliance with the ESA, APA, and NEPA is in both the process of decision-making *and* the substantive outcome of the government's decision (*i.e.*, implementation of the MBSD to ultimately restore land loss and nourish wetlands in the Barataria Basin), while Defendants' interest is purely in establishing that they satisfied their procedural requirements under the statutes (*i.e.*, defending the FEIS and Record of Decision).

Movants have demonstrated and long-standing local interests that are not adequately represented by any party.

EDF currently has thousands of members in the United States, more than 2,250 of whom reside in Louisiana, including in the parishes located in the coastal zone and areas of southeast Louisiana that will be directly impacted by the MBSD. Daniel Aff. ¶ 4. EDF maintains an office in Louisiana. *Id.* ¶ 5. Since 2010, EDF has built a team of eight full-time staff member based in New Orleans, who are specifically dedicated to advancing the MBSD and restoration of the Mississippi River Delta through education, research, community outreach, and advocacy. *Id.*

EDF is a founding and current member of the Restore the Mississippi River Delta ("MRD"). MRD is a coalition of EDF, National Audubon Society, the National Wildlife Federation, and Pontchartrain Conservancy. *Id.* ¶ 15. MRD's mission is to advance an equitable, safer, and flourishing coast for Louisiana's communities, ecosystems, and economy. *Id.* Through

the MRD Coalition, EDF launched communications and advocacy campaigns, produced educational materials and content, and connected information with key stakeholders and community members.

In coordination with local partners, EDF has initiated and invested in research regarding the Mississippi River Delta and the MBSD. *Id.* ¶ 9. In 2017, EDF convened a Sediment Diversion Operations Working Group that brought together 12 leading scientists to "discuss and advance the latest science regarding how to maximize land-building through a sediment diversion while considering other effects." *Id.* ¶ 10. From 2022-2024, EDF developed a multi-faceted modeling analysis of different proposed diversions and existing flood control measures along the lower Mississippi River to consider unexamined options for operating future and existing projects in tandem to produce better land-building and flood mitigation options for the communities and ecosystems that depend on and are impacted by them. *Id.* ¶ 11. Since 2015, EDF has been a leading voice on the development of an adaptive management plan tailored to sediment diversions, including specifically the MBSD. *Id.* ¶ 12. From 2017 to 2019, EDF undertook a community outreach initiative to engage stakeholders that live and/or work in the MBSD outfall area, including fisherman, community members, and academics. *Id.* EDF convened a stakeholder group, facilitated meetings, and worked with participants to develop a set of community-driven recommendations for how the Louisiana's Coastal Protection and Restoration Authority ("CPRA") should plan for adaptive management of sediment diversions. *Id.* EDF co-developed a "Conceptual Design for a Real-Time Sediment Diversion Operations Tool (SDOT) for the Mississippi River." *Id.* ¶ 13. The envisioned purpose for the SDOT would be to couple existing Mississippi River flow forecasts, sediment transport, salinity, turbidity, and related hydrodynamic models to a representative suite of well-specified, valued ecological and social components inside a highly

intuitive web-enabled software tool that allows decision-makers to explore within-year operational alternatives that best balance the multiple interests and constraints of relevance to their operations. *Id.* EDF commissioned an economic impact report that shows the positive economic and jobs impacts and local tax benefits for local businesses in Plaquemines Parish and surrounding Parishes due to construction of the MBSD. *Id.* ¶ 14.

LWF was incorporated in Louisiana in 1940 with a mission to restore, preserve, develop, and increase the birds, fish, game, forestry, and wildflowers and all other wildlife resources of the State of Louisiana. Triche Aff. ¶ 3. LWF membership includes a broad constituency of hunters, anglers, campers, birders, boaters and other outdoor oriented citizens, who utilize the Louisiana coastal zone, which includes the Barataria Basin. The current membership of 11,007 members includes 23 affiliated organizations and more than half of the members live in Louisiana's coastal zone parishes. *Id.* ¶ 4. LWF has long advocated for and supported effort to divert water from the Mississippi River to benefit its surrounding wetlands, including in the Barataria Basin, through messaging to LWF's members, in press releases, and letter to legislative delegates and state or federal agency representatives. *Id.* ¶ 5. Since the 1980s, LWF has consistently supported freshwater diversions as "the most promising solution" to the problems of coastal wetland loss in Louisiana and specifically in Barataria Basin and urged state and federal officials to "proceed with haste to restore the deposition of sediment in the deltaic plain region." *Id.* ¶ 14. In 2010, LWF became a partner organization of the Restore the Mississippi River Delta Coalition, through which LWF has engaged sportsmen and women in education and advocacy about how sediment diversion projects and freshwater diversion projects, including the MBSD, connect the Mississippi River to its adjacent floodplain to sustain the estuaries built by the river. *Id.* ¶ 16.

16

Orleans Audubon Society was founded in 1949 and incorporated in Louisiana in 1970 with the mission to conserve wildlife and wild places of the southeastern U.S. and to foster an appreciation of nature.  Muth Aff. ¶¶ 2, 4.  Orleans Audubon Society is a Chapter of the National Audubon Society, and it currently has 1,052 conservation-minded members, servicing eleven Louisiana Parises, including six Parishes that are wholly or partly in the Barataria Basin: Plaquemines, Jefferson, Orleans, St. John the Baptist, St. Charles and Lafourche. *Id.* ¶ 5.  Orleans Audubon Society and its members have been in and on the public record advocating for the protection and restoration of the resources of the Barataria Basin since the organization's inception 75 years ago. *Id.* ¶ 11. Orleans Audubon Society has developed environmental education programming is focused on a variety of topics, including coastal restoration, threatened or endangered species, and bird conservation. *Id.* ¶¶ 8, 10.  Orleans Audubon Society leads field trip to the Barataria Basin, conducts research in the Barataria Basin, and supports citizen-science programs conducted by its members that monitor species in the Barataria Basin. *Id.* ¶¶ 19-20. Orleans Audubon Society partnered with The Nature Conservancy in establishing The Lafitte Woods Nature Preserve on Grand Isle in Jefferson Parish and within the Barataria Bay hydrological basin.  Orleans Audubon Society owns and manages a small bird sanctuary there. *Id.* ¶ 24.  In partnership with the National Audubon Society and Audubon Delta, Orleans Audubon Society helped to designate the Barataria-Terrebonne Important Bird Area ("IBA") of global significance to birds. *Id.* ¶ 26. This IBA faces a number of threats, most pressingly coastal land loss, the direct result of Mississippi River sediment starvation, among other factors. *Id.*  Orleans Audubon Society maintains resources for birders, including the Southeast Louisiana Birding Guide, which directs visiting birders to sites in the Barataria Basin. *Id.* ¶ 27.  Orleans Audubon Society partners with the Barataria-Terrebonne National Estuary Program ("BTNEP") on various

habitat and bird conservation projects and is a member of the BTNEP's Biological Resources Action Plan Team.  *Id.* ¶ 28.

Ryan Lambert is a recreational boater, fisherman, hunter, and natural observer in the Barataria Basin.  Lambert Aff. ¶ 2.  Lambert has been a professional boat captain in Buras, Plaquemines Parish, Louisiana for 46 years.  *Id.* ¶ 3.  He was the Vice President of the Louisiana Charter Boat Association for approximately eight years until 2023.  *Id.*  Since the mid-1990s, he has been the sole proprietor of Cajun Fishing Adventures, a Louisiana corporation having its principal place of business in Buras, Louisiana. *Id.* ¶ 4.  Cajun Fishing Adventures employs 12 boat captains.  *Id.* Cajun Fishing Adventures is a charter boat operator based out of Buras, Plaquemines Parish, Louisiana that provides ecotourism, hunting, and fishing experiences in the Mississippi River Delta.  *Id.* ¶ 5.  Cajun Fishing Adventures also operates an all-inclusive hunting and fishing lodge in Buras, Louisiana.  *Id.* ¶ 8.

Cajun Fishing Adventures historically provided fishing and hunting trips on the Western side of the Mississippi River, the area in which the MBSD is intended to rebuild and sustain. As the ecosystem has changed, fishing and hunting have become increasingly impracticable in the Barataria Basin such that nearly 100% of Cajun Fishing Adventures fishing and hunting trips now take place on the Eastern side of the River. *Id.* ¶ 6. Lambert has personally observed changes in Louisiana state regulations that decrease the allowable limits for redfish and speckled trout that can be caught. *Id.* ¶ 7. Lambert participated as a member of the Framework Development Team and the Fisheries Focus Group for Louisiana's Comprehensive Master Plan for a Sustainable Coast (2012 and 2017), which included plans to implement the MBSD.  *Id.* ¶¶ 9-10.  On April 18, 2011, Lambert testified before the U.S. House of Representative's Committee on Natural Resources in the Oversight Field Hearing on "Gulf of Mexico: A Focus on Community Recovery and New

Response Technology" about the impacts of the BP Deepwater Horizon Oil Spill and other natural and manmade activities on the estuaries of the Mississippi River Delta. *Id.* ¶ 12. In his testimony, he urged: "We have to reopen the Mississippi River to our estuaries and let the freshwater infiltrate back into the natural bayous. We can pump sediments to accelerate the process but without freshwater from the river this is not sustainable and our grandchildren will be pumping again later." *Id.* Both Lambert's professional and personal interests are currently being impacted by the ongoing deterioration of wetlands in the Barataria Basin. *Id.* ¶ 16.

These localized interests of the Movants are not adequately represented by the parties.

## II.    ALTERNATIVELY, THE COURT SHOULD PERMIT MOVANTS TO INTERVENE PERMISSIVELY.

Alternatively, Movants meet the standards for permissive intervention pursuant to Rule 24(b). "[P]ermissive intervention is appropriate where 'an applicant's claim or defense and the main action have a question of law or fact in common.'" *Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 824 (5th Cir. 2003) (quoting Fed. R. Civ. P. 24(b)(2)). "[D]istrict courts have 'broad discretion' in allowing intervention." *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 179 F. Supp. 3d 656, 667 (E.D. La. 2016) (citation omitted).

Rule 24(b) instructs courts to consider whether permissive intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *see, e.g.*, *Am. Petroleum Inst. v. Dep't of Interior*, No. 2:21-cv-02506, 2022 WL 1297802, at *5 (W.D. La. Apr. 29, 2022) (denying permissive intervention because it "could expand the case to issues not before this Court, potentially increasing costs and delaying resolution of this matter"); *Gen. Land Off. of Tex. v. FWS*, No. A-17-CA-538-SS, 2017 WL 10741921, at *4 (W.D. Tex. Nov. 30, 2017) (denying permissive intervention because it "would result in duplication and delay of the case's resolution," but granting leave to file an amicus). As discussed above, Movants' application is

19

timely. Additionally, while Movants possess legally protectable interests that diverge from those represented in the case, they do not seek to expand the case to issues beyond those currently before the Court. Instead, Movants seek intervention to advance theories of law on those same issues in order to protect the direct and substantial interests of themselves and their members.

Indeed, Movants' participation will aid in the Court's review. As expounded above, Movants have deep and longstanding ties to the region, discernable expertise in coastal restoration—including sediment diversions, and a great deal of knowledge of the MBSD in particular. Additionally, the FEIS and Plaintiffs' Complaint do well to communicate the extensive range of stakeholder interests at stake in the Basin and regarding implementation of the MBSD. If granted intervention, Movants will represent a critical perspective that may be otherwise overlooked. Accordingly, Movants request this Court grant intervention.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court grant Movants' Motion to Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ E. Blair Schilling*
H.S. Bartlett III (LA Bar No. 26795)
E. Blair Schilling (LA Bar No. 35308)
Molly Wells (LA Bar No. 36721)
Isabel A. Englehart (LA Bar No. 40354)
**FISHMAN HAYGOOD, LLP**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:  504.556.5549
Facsimile:  504.949.8202
tbartlett@fishmanhaygood.com
bschilling@fishmanhaygood.com
mwells@fishmanhaygood.com
ienglehart@fishmanhaygood.com

*Counsel for Intervenor-Defendants Environmental Defense Fund, Louisiana Wildlife Federation, Orleans Audubon Society, and Cajun Fishing Adventures, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served upon counsel for all parties through the CM/ECF filing system with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 15th day of July 2024.

*/s/ E. Blair Schilling*